IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KUHN CAPITAL, INC., an Illinois Corporation, and RYAN KUHN, Individually<br><br>Plaintiffs,<br><br>v.<br><br>GIBSON GUITAR CORP., a Delaware Corporation, and HENRY JUSZKIEWICZ, Individually,<br><br>Defendants. | Case No.: 08CV2170<br><br>Judge St. Eve<br><br>Magistrate Judge Denlow |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OF COUNTS I AND II OF PLAINTIFFS' AMENDED COMPLAINT AND TO DISMISS COUNTS III AND IV OR MAKE A MORE DEFINITE STATEMENT**

Gibson Guitar Corp. ("Gibson") submits this memorandum in support of its continued motion to compel Kuhn Capital, Inc. ("Kuhn Capital") and now Ryan Kuhn ("Kuhn") (collectively, "Plaintiffs") to submit the contractual and quasi-contractual claims of Plaintiffs' Amended Complaint (Counts I and II) to arbitration as required by the written agreement out of which these disputes arise.[1]

Plaintiffs have since added (non-contractual) claims for defamation (Counts III and IV) although it is unclear against whom.[2] If these new claims are not directed against Gibson, they pose no obstacle Gibson's motion to compel. If the defamation counts are directed against Gibson, they could be stayed pending the outcome of the arbitration the Parties bargained for,

---

[1] Gibson reasserts and incorporates by reference its original Motion to Compel Arbitration. (Doc. 7.)

[2] Gibson's instant motion addresses Counts III and IV to the extent that Plaintiffs may have directed these claims against it. Gibson CEO Henry Juszkiewicz does not join in this motion and was not served with the Amended Complaint until May 15, 2008.

9175478                                1

but should be dismissed now as being without merit. As a matter of law, the email by Gibson CEO Henry Juszkiewicz ("Juszkiewicz") that forms the basis of Plaintiffs' defamation allegations does not contain defamatory *per se* or actionable defamatory statements and is a privileged publication.

## BACKGROUND

Although this matter came before the Court quite recently in substantially the same form, Gibson offers a brief review:

Kuhn Capital alleges that it entered into a written agreement (the "Contract") with Gibson to provide certain services related to acquisition transactions. The Contract calls on Kuhn Capital to act as Gibson's agent in identifying and screening potential acquisition targets. (Am. Compl. ¶ 9.) As remuneration, the Contract entitles Kuhn Capital to monthly retainer fees and a success fee—the latter being contingent on a successful acquisition by Gibson of a target identified and screened by Kuhn Capital, and valued as a percentage of the successful purchase resulting from Kuhn Capital's efforts. (*Id.* at ¶ 10.)

Kuhn Capital states that it identified and screened TC Group A/S ("TC Group") for acquisition by Gibson. (*Id.* at ¶ 11.) It further alleges that Gibson added to Kuhn Capital's duties with respect to closing the acquisition of TC Group and supplemented Kuhn Capital's compensation if the acquisition of TC Group was successful. (*Id.* at Exh. C.) To wit, Kuhn, the principal for Kuhn Capital, emailed Gibson on August 6, 2007:

> We discussed today Kuhn Capital earning a $250K fee in addition to the currently agreed-upon fee in exchange for assuming responsibility in the TC due diligence process. Our current agreement does not call for Kuhn Capital participation in the due diligence and closing negotiations process.
>
> For the increased fee I would "do whatever has to be done" to close the deal.

> In that function, I'm willing to act as a central coordinator and clearinghouse for all relevant information. Once due diligence information is forthcoming, I would also participate – as you see fit – in deciding how to respond to it. Such responses include suggestions on purchase agreement language and on Gibson's negotiating positions. I would also calculate the affect of such purchase agreement changes on Gibson's return on investment.
>
> The object is to use the results of due diligence inquiries and purchase agreement language to maximize Gibson's return on investment.
>
> Please indicate whether you agree with this proposal.

(*Id.*)  Roxanne Khazarian ("Khazarian"), Gibson's legal counsel, replied in an email dated August 15, 2007:

> I received confirmation from Henry this morning that an addition to the success fee in your retainer for closing on the TC transaction, as well as an additional 3 month extension of your retainer, is acceptable. *I will send you a revised amendment to close this out.*

(*Id.*) (emphasis supplied).

Although Kuhn Capital notes that the proposed amendment was not formally integrated into the Contract, (*id.* at ¶ 15,) the email exchange evidences that the Parties intended for any additional obligations on Kuhn Capital and Gibson arising from the acquisition of TC Group to be amendments to the existing Contract. In fact, while it is unnecessary to consider anything beyond Plaintiffs' pleadings in compelling arbitration of Plaintiffs' claims for the $250,000 success fee referenced in the emails above, an email from Kuhn to Khazarian (attached here as Exhibit A and that Plaintiffs understandably did not attach to the Amended Complaint) confirms this to be the case.

The Contract contains a broad arbitration provision covering all "disputes arising out of the Agreement." (*Id.* at Exh. A.)  Pursuant to this clause, the parties were arbitrating a dispute relating to Kuhn Capital's performance and its entitlement to compensation for identifying and

screening acquisition targets. Plaintiffs withdrew that arbitration demand after Gibson's acquisition of TC Group collapsed, but persist in refusing to submit this dispute about Kuhn Capital's performance and its entitlement to a success fee for closing services to arbitration.[3]

In addition, Plaintiffs now claim that an email from Juszkiewicz to Kuhn defamed the business reputation of Kuhn and Kuhn Capital. (Am. Compl. ¶¶ 18, 47, 53.) The October 5, 2007 email on which Plaintiffs base Counts III and IV responds to an email on the same date from Kuhn to Juszkiewicz and three other Gibson employees reading:

> Attached is a list of current deal issues.
>
> I'd especially appreciate your close reading of a new issue, TC's desire to eliminate depreciation/amortization expense from the net working capital test calculation.

(*Id.* at Exh. D.) Juszkiewicz responded to all several hours later and included Anders Fauerskov ("Fauerskov") and Anders Fisker ("Fisker"), representatives for TC Group:

> I have asked that this be shared with all on both sides of the table. You <u>did not</u> do this. I expect that any issues raised go to Anders and his team on a timely basis. These issues have been presented to me some time ago and should have been presented for comment by TC <u>IMMEDIATELY</u>.
>
> You have totally ignored the October 1st deadline and you continue to harp on your previous experiences as an excuse. I also have previous experiences and I believe you have successfully raised mole hills into mountains. Statements were made that were unsupported by underl[y]ing facts and the schedule was allowed to creep past the spirit of the letter of intent.

---

[3]　　Plaintiffs' persistence in this litigation with its contractual and quasi-contractual claims in Counts I and II is curious in light of Gibson's failure to acquire TC Group. Just as the absence of an acquisition eliminated the possibility of obtaining a success fee for identifying and screening TC Group in the arbitration from which Plaintiffs withdrew, so to does the absence of an acquisition eliminate Plaintiffs' entitlement to an additional success fee for closing services based on Kuhn's own characterization of the intended amendment to the Contract. *See* Exhibit A ("Agree that, entirely contingent upon the successful execution of a purchase agreement by Gibson to acquire TC Group, Gibson will pay KC a management fee $250,000 due upon purchase agreement execution.").

>I specifically said all issues[s] must have a deadline. I guess you missed that instruction (again). I expected a deadline date certain on each and every issue.
>
>I will state that I expect all issues to be closed within 3 days of the publishing of the final year end numbers of TC Group. I expect an agreement to be presented within 5 days of these numbers being issued.
>
>Anders, please review the below issues raised by Ryan and let's schedule a discussion when the accounting facts are confirmed.
>
>Ryan, I will write you privately.

(*Id.*)

## ARGUMENT

**I.     Plaintiffs' Claims for $250,000 in Compensation for Closing Services Are Subject to Arbitration under the Contract**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir.1995). Under the FAA, arbitration clauses are valid and enforceable agreements to be viewed with favor as a matter of federal and public policy. 9 U.S.C. § 2; *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir.1993) ("[I]t is beyond peradventure that the Federal Arbitration Act embodies a strong federal policy in favor of arbitration.").

The statute therefore directs federal courts to stay legal proceedings when a particular dispute is found to be subject to arbitration under a contract or agreement. 9 U.S.C. § 3. In keeping with the spirit of the FAA, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause [in a contract or agreement] is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, it cannot seriously be disputed that the arbitration clause in the Contract would cover an alleged breach of an amendment to the original written agreement. The Contract contains an arbitration provision that states:

> The parties agree to use their good faith efforts to resolve disputes arising out of the Agreement before resorting to binding arbitration. Should the parties' good faith efforts fail to resolve the dispute, such dispute shall be resolved using binding arbitration pursuant to the rules of the American Arbitration Association. Each party will be responsible for its own costs of arbitration and related costs.

(Am. Compl. Exh. A.) On the basis of the allegations in and exhibits to the Amended Complaint, Kuhn Capital's instant breach of contract claim (Count II) is "a dispute arising out of the Agreement."

Gibson is also entitled to a stay with regards to Kuhn Capital's quantum meruit claim (Count I). This Court observed that

> if the basis of a quantum meruit claim can be read to fit within an arbitration clause, arbitration should be ordered—particularly if the quantum meruit claim essentially involves, as it does here, an alternate theory of breach of contract.

*Teldata Control, Inc. v. County of Cook*, No. 02 C 7439, 2003 WL 1873921 (N.D. Ill. Apr. 14, 2003) (unpublished) (citing *U.S. & Int'l Travel & Tours, Inc. v. Tarom-S.A.,S.C. Compania Nationala de Transporturi Aeriene Romane*, 98 F. Supp. 2d 979, 980 (N.D. Ill. 2000). Here, the arbitration clause is broad in scope and sweeps in collateral claims. *See ACE Capital re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 34-35 (2d Cir. 2002) (broad arbitration clauses cover collateral matters); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 226-27 (2d Cir. 2001) (interpreting arbitration clauses using "arising from" as broad and "arising under" as narrow). Moreover, Kuhn Capital raises its quantum meruit claim only as a hedge against the determination that the quoted email exchange (between Kuhn and Khazarian) and alleged actions taken pursuant to it were insufficient to create an

enforceable contract. This claim then is also one which Kuhn Capital should submit to arbitration.

## II.     Plaintiffs' Defamation Claims Are Insufficiently Pled

In amending their complaint to add new claims and new parties, Plaintiffs did not state whether their defamation claims (Counts III and IV) lie against Gibson, Juszkiewicz, both or neither. Kuhn and Kuhn Capital allege that Juszkiewicz made the allegedly defamatory statements, (Am. Compl. ¶¶ 2, 43-44, 49-50,) and include Juszkiewicz in the caption of the Amended Complaint, but Juszkiewicz is not pled as a party, (*see id.* at ¶¶ 3-5,) and neither Juszkiewicz nor Gibson appear in the prayers for relief of Counts III or IV.

Pursuant to Federal Rule of Civil Procedure 12(e), Gibson is entitled to an order that Plaintiffs make a more definite statement with regard to Counts III and IV, but Gibson also notes that irrespective of whom Plaintiffs intended to respond to these allegations, Juszkiewicz's October 5, 2007 email cannot, as a matter of law, form the basis of liability for defamation *per se* to Kuhn or Kuhn Capital.

The email self-evidently does not impugn either Kuhn's business reputation or that of Kuhn Capital (indeed Kuhn Capital is mentioned nowhere at all). Moreover, even if it had anything to say about either's reputation, Juszkiewicz's statement, particularly to representatives of TC Group, about how Gibson and its representatives would close its acquisition of TC Group is a privileged publication. As such, the Court may dismiss Counts III and IV of Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because clarification from Plaintiffs as to whom they are directing the defamation claims would still not result in a claim that states a cause of action for which relief can be granted.

### A.    Juszkiewicz's October 5, 2007 email contains nonactionable opinions.

In Illinois, the law is clear that "opinions" cannot be the subject of a defamation action unless they contain a false assertion of fact. *Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207, 1220 (Ill. 1996) (noting the overlap of First Amendment protections); *see also Doherty v. Kahn*, 682 N.E.2d 163, 172 (Ill. App. Ct. 1997) (whether a statement is an opinion or fact is a question of law).  To determine if a statement contains a false assertion of fact, a court must consider whether the statement can be objectively proved to be true or false.  *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 698-99 (Ill. App. Ct. 2002).  If the statement is "too broad, conclusory and subjective to be objectively verifiable," it does not constitute actionable defamation.  *Hopewell v. Vitello*, 701 N.E.2d 99, 103-04 (Ill. App. Ct. 1999).

In applying this test, the Illinois courts have repeatedly held that vague or conclusory statements are non-actionable opinions, even if they fall within one of the categories of defamation *per se*.[4]  *Id*. at 102-03.  Indeed, in a series of recent decisions, the Illinois appellate courts have found conclusory statements to be non-actionable opinions, even though the statements contained explicit allegations of "lying," "dishonesty," "cheating the city" or engaging in criminal behavior.  *See*, *e.g.*, *Schivarelli,* 776 N.E.2d at 698-99 (finding no defamation where no explanation of the evidence for the assertion accompanied defendant's statement that the plaintiff was "cheating the city"); *Dubinsky v. United Airlines*, 708 N.E.2d 441, 451 (Ill. App. Ct. 1999) (publicly calling plaintiff a "crook" was not defamatory); *Hopewell*, 701 N.E.2d at 105 (noting that "incompetency" could be interpreted differently by different

---

[4]    Gibson does not accept Plaintiffs' assertion that the statements in the Juszkiewicz's email fall into the category of defamatory *per se*.  Plaintiffs' naked allegation that Juszkiewicz impugned Kuhn or Kuhn Capital's business reputation is refuted by the text of the email which is of the ordinary variety that pass between parties in almost any high-pressure business transaction.

people and without factual details to limit the scope could not form the basis of a defamation claim); *Piersall v. SportsVision of Chicago*, 595 N.E.2d 103, 107 (Ill. App. Ct. 1992) (concluding that the "general statement that someone is a 'liar,' without being put in context of specific facts, is merely opinion.")

The October 5, 2007 email from Juszkiewicz with carbon copies to TC Group representatives includes no allegations with respect to Kuhn or Kuhn Capital's reputation as severe as those rejected as non-actionable in *Schivarelli*, *Dubinsky*, *Hopewell*, and *Piersall*. Juszkiewicz's email further provides no specific factual context for his opinions that Kuhn has "raised mole hills into mountains," made statements "that were unsupported by underl[y]ing facts" or fallen behind schedule on closing the transaction.

      **B.**    **Juszkiewicz's October 5, 2007 email is subject to innocent construction.**

Even if Juszkiewicz's email was not non-actionable opinion, it cannot support Plaintiffs' claims in light of the "innocent construction" rule. Even where a statement falls into a defamatory *per se* category, the statement will not be defamatory "if it is reasonably capable of an innocent construction." *Tuite v. Corbitt*, 830 N.E.2d 779, 785 (Ill. App. 2005); *see also Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 207 (Ill. 1992). "The rule of innocent construction requires a court to determine whether the statement can reasonably be innocently interpreted," considering "the statement in context" and "giv[ing] its words and implications their 'natural and obvious meaning.'" *Tuite*, 830 N.E.2d at 785. If the statement is reasonably capable of such a construction, the court *must* so construe the statement, rather than engaging in any kind of "balancing test." *Harte v. Chicago Council of Lawyers*, 581 N.E.2d 275, 278 (Ill. App. Ct. 1991) (citing *Mittleman v. Witous*, 552 N.E.2d 973 (Ill. 1989)).

Plaintiffs read Juszkiewicz's email in its worst light, but ignore that Kuhn remained a part of the team that attempted to negotiate Gibson's acquisition of TC Group for nearly two months after this exchange. (Am. Compl. Exh. E.) Plaintiffs' preferred construction that Juszkiewicz falsely impugned Kuhn or Kuhn Capital's business reputation is at odds with Plaintiffs' continued involvement with Gibson, Juszkiewicz, and TC Group for a considerable period following Juszkiewicz's email.

### C. Juszkiewicz's October 5, 2007 email was a privileged publication to representatives of TC Group, an interested party.

Where a qualified privilege exists, "a communication that might otherwise be actionable is not actionable due to the occasion on which or the circumstances under which it was made." *Popko v. Continental Cas. Co.*, 823 N.E.2d 184, 190 (Ill. App. Ct. 2005). The privilege is "based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Kuwik v. Starmark Star Marketing & Admin.*, 619 N.E.2d 129, 133 (Ill. 1993).

With respect to the existence of a qualified privilege, Illinois follows the Restatement (Second) of Torts. *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 297 (Ill. App. Ct. 2001). Qualified privilege may exist in (1) situations in which some interest of the defendant is involved, (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved, and (3) situations in which a recognized interest of the public is concerned. *Id.*; *see also Kuwik*, 619 N.E.2d at 133-34. To determine the existence of privilege, a court looks "only to the occasion itself," and "determine[s] as a matter of law and general policy whether the occasion created a recognized duty or interest that makes the communication privileged." *Parker*, 756 N.E.2d at 297. The court "weigh[]s the value of the

type of interest to be protected against the degree of damage to be expected from release of the type of defamatory matter involved." *Id.*

Courts have consistently protected communications between individuals with a shared business interest in a transaction from the chilling effect of defamation litigation. *See*, *e.g.*, *LA Plant v. Hyman*, 180 P. 83, 83 (Colo. 1919) (privileging a circular letter passed between shareholders in a corporation prior to board elections stating that that corporate directors were guilty of conspiracy). For example, when a defendant bank believed that irregularities on several loan applications were traceable to the same law firm, a New York state court imposed a qualified privilege barring the law firm's defamation claims against the bank. *Bigman v. Dime Savings Bank of New York, FSB*, 533 N.Y.S.2d 902, 904 (NY Ct. App. 1988). Specifically, the statement by another attorney that the defendant bank said it could not close a deal for the attorney's clients because of the involvement of the plaintiff law firm in the transaction was privileged by the common interest of the attorney and the defendant bank. *Id.*; *see also Miller v. Danville Elks Lodge 332, B.P.O.E.*, 569 N.E.2d 1160, 1165-66 (Ill. App. Ct. 1991) (collecting cases in which statements motivated by a legitimate business interest received qualified privilege).

The instant circumstances involve parties with an even closer relationship than the one privileged in *Bigman*. Communications between individuals responsible for closing a business transaction about how the transaction will be closed falls neatly into the common business interest privilege from defamation. Juszkiewicz, on the one hand, and Fauerskov and Fisker, on the other, shared a common business interest in how the Gibson acquisition of TC Group would proceed, especially with regard to Gibson's alleged agent in the closing transaction. Indeed this common interest appears to be the very topic of Juszkiewicz's email and reason for carbon

copying the TC Group representatives in Juszkiewicz's response to Kuhn.

Once a publication is privileged, Plaintiffs cannot prevail absent a showing that the privilege was abused through actual malice. Plaintiffs, however, have not and cannot even allege such malice.

## CONCLUSION

For the foregoing reasons, Gibson respectfully requests that the Court enter an order compelling Kuhn and Kuhn Capital to submit Counts I and II to arbitration and stay the federal proceeding until that arbitration has concluded. Gibson also respectfully requests that the Court dismiss Counts III and IV for the failure to state a claim upon which relief can be granted.


Dated: May 27, 2008

Respectfully submitted,

GIBSON GUITAR CORP.


By: /s/ Ranjit J. Hakim_____
        One of Its Attorneys

Michael J. Gill
Ranjit Hakim
Mayer Brown LLP
71 S. Wacker
Chicago, IL 60606
(312) 782-0600

# EXHIBIT A

## Jami Foster

| | |
|---|---|
| **From:** | Ryan Kuhn [rkuhn@kuhncap.com] |
| **Sent:** | Tuesday, August 28, 2007 6:15 PM |
| **To:** | Roxanne Khazarian; rkhazarian4@yahoo.com; Jami Foster |
| **Subject:** | Third Amendment to Letter Agreement |
| **Attachments:** | 3rd Amendment to Letter Agreement.doc |

Rox,

I thought I'd take advantage of the current hiatus by putting my hand to a Third Amendment to our Letter Agreement. See attached.

It follows the form of the preceding two Amendments and addresses the incremental $250K management fee.

Let me know what you think.

Thanks,

Ry



KUHN CAPITAL
500 Western Ave., Suite 200
Lake Forest, IL  60045
Office: 847/457-2400
Cell: 773/330-7547
www.kuhncap.com

3/3/2008

## THIRD AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement is entered into effective as of September 1, 2007.

WHEREAS, Gibson Guitar Corp. ("Gibson") and Kuhn Capital, Inc. ("KC") entered into that certain Letter Agreement dated December 1, 2006 relating to the engagement of KC by Gibson to facilitate Gibson's purchase of certain vendors (the "Letter Agreement"); and

WHEREAS, the Letter Agreement is attached hereto as Exhibit A; and

WHEREAS, the parties have extended this Letter Agreement by three months in a preceding Amendment to Letter Agreement, and this Amendment is attached hereto as Exhibit B; and

WHEREAS the parties have extended this Letter Agreement by an additional three months in a Second Amendment to Letter Agreement, and this Amendment is attached hereto as Exhibit B; and

WHEREAS, the parties wish to extend the Letter Agreement for an additional 90 day period under the same terms.

WHEREAS the parties also wish to extend the scope of KC duties to include project management responsibility for coordinating the due diligence efforts and negotiations required to execute Gibson's purchase of TC Group A/S ("TC").

NOW, THEREFORE, in consideration of the mutual promises made herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto

1) Extend the Letter Agreement for the period of September 1 2007 to November 30, 2007.
2) Agree that, entirely contingent upon the successful execution of a purchase agreement by Gibson to acquire TC Group, Gibson will pay KC a management fee $250,000 due upon purchase agreement execution. This management fee is independent of, and in addition to, any other fees earned by KC as per the Letter Agreement.

IN WITNESS WHEREOF, the parties have executed this Amendment to Letter Agreement as of September 1, 2007.

Gibson Guitar Corp.                           Kuhn Capital, Inc.

By: _____                    By: _____

Name: _____     Name: _____

Title: _____    Title: _____

# CERTIFICATE OF SERVICE

      Ranjit Hakim, an attorney, hereby certifies that he caused a copy of the foregoing **NOTICE OF MOTION, DEFENDANTS' MOTION TO COMPEL ARBITRATION OF COUNTS I AND II OF PLAINTIFFS' AMENDED COMPLAINT AND TO DISMISS COUNTS III AND IV OR MAKE A MORE DEFINITE STATEMENT,** and **DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OF COUNTS I AND II OF PLAINTIFFS' AMENDED COMPLAINT AND TO DISMISS COUNTS III AND IV OR MAKE A MORE DEFINITE STATEMENT** to be served via email and the Court's CM/ECF system upon all counsel listed below on May 27, 2008:

    David Bronner
    Nicholas Anaclerio
    Antonio Caldarone
    UNGARETTI & HARRIS LLP
    3500 Three First National Plaza
    Chicago, IL 60602
    (312) 977-4400

                                                  /s/ Ranjit J. Hakim_____
                                                          Ranjit Hakim